IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

CANDICE CROMBIE,                              CV 08-6255-MA

        Plaintiff,                    OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.


JULIANA E. COONS
P.O. BOX 11650
Eugene, OR 97440
(541) 345-4499

      Attorney for Plaintiff


1 - OPINION AND ORDER

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

LISA GOLDOFTAS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3858

        Attorneys for Defendant

MARSH, Judge.

        Plaintiff Candice Crombie seeks judicial review of

the Commissioner's final decision denying her August 18, 2003,

application for supplemental security income benefits (SSI) under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

        In her SSI application, Plaintiff alleges she has been

disabled since January 24, 2000, because of numerous pain

complaints arising from osteoporosis in her lower back and a

tumor in her left shoulder blade.  She also alleges physical

impairments related to hypertension, hyperthyroidism, and chronic

fatigue.  Plaintiff's claim was denied initially and on

reconsideration.  On February 28, 2006, the Administrative Law

Judge (ALJ) held an evidentiary hearing and on November 9, 2006,

issued a decision that plaintiff is not disabled.  On June 23,

2008, the Appeals Council denied plaintiff's request for review.

2 – OPINION AND ORDER

Plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case for further proceedings to fully evaluate plaintiff's documented psychiatric impairments which, when considered in conjunction with her documented physical impairments, establish that plaintiff is disabled.

For the following reasons, the court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this action.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff suffers from non-severe mild degenerative disc disease of the lumbar spine, hypertension, hyperthyroidism/Graves disease, left elbow ulnar nerve entrapment, and minimal degenerative changes in her left knee. The ALJ also commented that Plaintiff exhibits "myriad physical symptoms including pain, fatigue, weakness, and motor loss which are not necessarily linked to a specific underlying medical

3 - OPINION AND ORDER

condition," and which have been attributed to "psychological factors" such as "functional overlay, pain disorder, somatic focus, and similar characterizations."  The ALJ found plaintiff's impairments, when considered either singly or in combination, were not severe and did not impose "vocationally significant work-related limitations."  20 C.F.R. 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

Consistent with these findings, the ALJ found plaintiff is not disabled and is not entitled to SSI benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence both supporting or detracting from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in (1) failing to give

clear and convincing reasons for rejecting plaintiff's testimony, 2) failing to make a Step Three finding that plaintiff's combined impairments met a Listed Impairment, and (3) failing to order further development of the record regarding plaintiff's psychological/psychiatric impairments.

Accordingly, Plaintiff contends the Commissioner's final decision should be remanded for further development of the psychological/psychiatric record.

**RELEVANT RECORD**

**Plaintiff's Evidence**.

Plaintiff's evidence is derived from her disability report, hearing testimony, and work history reports.

**a. Work History.**

Plaintiff was 50 years old on the date of the hearing. In 1998, she worked as a cashier for a gas station, and in 2000 she was employed as the assistant manager in the gift shop at the Oregon Caves National Monument. In August 2000, she fell while working in the gift shop and filed a workers compensation claim. She alleged she injured her upper and lower extremities, neck, back, right shoulder, and head. Plaintiff described tripping on some stairs, flying in the air 3-4 feet into the gift shop, landing on her knees and the tops of her feet and hitting her hands and elbows on the floor.

Nevertheless, plaintiff's workers compensation claim was

denied for lack of any evidence that she was injured in the fall.

Plaintiff has also worked as a self-employed day care provider and has written children's books, one of which was published through her church.

### b.   Daily Activities.

Plaintiff has difficulty driving because her lower back "pinches," causing pain radiating into her legs, making it difficult for her to use the clutch pedal to shift gears.  Her daughter and sister drive her to and from the store and doctors' appointments.  She is unable to walk any significant distance. She also has pain  in her right forearm and hand that makes it difficult for her to write or to steer her car.  She also has a deep ache and weakness from her right shoulder to her right elbow.  She is also unable to stoop or kneel.

Plaintiff has difficulty sitting for any length of time and told the ALJ that she would likely be in bed all day the next day because of the time she spent sitting during the hearing.

She also has difficulty folding her clothes, loading or unloading her dishwasher, dressing or bathing herself.  She has help doing any shopping.

Plaintiff has a dog and four cats at home.  Her son takes care of their needs.

### c.  Self-Described Medical History.

Plaintiff described numerous physical pain complaints for

7 - OPINION AND ORDER

which she has sought medical treatment and which she relates
directly to the injuries she allegedly incurred when she fell at
work.  She also described falling at home at a later date and
being found on the floor by her granddaughter.

Plaintiff asserts her most serious source of pain is in the
middle of her back radiating into her fallopian tubes, causing
numbness in her legs, which, in turn, has caused her to fall down
five times in the past year alone.   She also has constant pain
in both arms, more severe in the right.

**Relevant Medical Treatment Records**.

**Three Rivers Community Hospital.**

In July 1997, after plaintiff complained of right foot and
left knee pain, x-rays of both joints revealed only minimal joint
space narrowing of the left knee.

In June 2000, plaintiff went to the Emergency Room following
a fall at work.  As the examination progressed, plaintiff first
complained of injuries to both knees and then both ankles.  The
examining physician noted she had walked into the examination
room with no difficulty in her gait.  There was some swelling but
no bruising around the knees.  There were no objective findings
of injuries to her ankles.  Plaintiff then complained of pain in
both wrists, but there was no swelling and no pain in the
"snuffbox" (a hollow in the back of the wrist).  She complained
of pain in both elbows, both of which were swollen but not

bruised.

After the examination had ended, plaintiff remarked that she thought she had a concussion "and that is really why I am here." She was discharged in "good, seemingly stable condition" and she "walked out of the hospital with no difficulty in her gait."

X-rays of the left wrist and left ankle were normal.  An x-ray of the right knee showed minimal joint narrowing with no significant soft tissue change or hemathrosis (bleeding into joint spaces).  A left knee x-ray showed medial joint narrowing possibly related to early degenerative disc disease, meniscus injury, "or simply an artifact of projection."

In August 2000, an MRI of the cervical spine was normal, but the lumber spine showed "subtle narrowing at L4-5 and more pronounced narrowing at L5-S1, representing mild "degenerative spondylitic spurring of the lumbar vertebral bodies with disc space narrowing at L4-5."  A CT scan of the brain was normal.

In March 2003, plaintiff went to the Emergency Room for fatigue and chest pain that had lasted for a week.  All tests were normal.

In June 2004, plaintiff was admitted with complaints of fever and facial swelling and pain.  She was diagnosed with erysipelas (skin infection).

In July 2004, plaintiff was admitted with a diagnosis of acute renal failure with possible acute tubular nephritis.

In June 2005, plaintiff went to the Emergency Room for chest pain for 24 hours and tightness in her chest for a week, with low energy.  Following testing, it was determined that plaintiff's "complaints [were] not cardiac in nature."

**Siskiyou Community Health Center.**

In June 2000, plaintiff was treated following her fall at the Oregon Caves gift shop.  Plaintiff walked with "a very ataxic" (unsteady) gait, which plaintiff attributed to multiple bruises and swellings that were visible along both knees and hips.  Although she complained of head injuries, she declined further examination.

In July 2000, plaintiff complained of numbness and tingling in her hand.  She was referred to the Neurology Department.

In August 2000, plaintiff complained of a recent loss of consciousness, which caused her to slump to the floor.  An examination of the left knee showed no swelling or erythema, but some tenderness over the lateral collateral ligament and laxity in the knee, with limited movement in the left ankle.

In September 2000, plaintiff complained of continued back pain, chondromalacia of the left knee, left ankle sprain, and post-concussive syndrome.

In December 2000, plaintiff continued to complain of headaches and numbness in her arms, legs, left buttock, and left thumb but had stopped having blackouts arising from her fall at

the gift store.  She had a cyst on the left side of her back which was not painful on palpation.

In April 2004, plaintiff complained of chronic low back pain.  She was diagnosed with an exacerbation of chronic lumbosacral pain with sciatic symptoms.

In June 2004, plaintiff complained of a dull pain in her low back radiating into her legs. She was assessed as having "low pain with painful neuropathy" although the examining physician could not "find any focal deficits."

In September 2004, plaintiff complained of overwhelming fatigue.

In October 2004, plaintiff complained of left wrist pain which was "well out of proportion with pain which was not caused by injury."

In February 2005, plaintiff complained of arm and hand pain, which was assessed as "myofascial pain of uncertain etiology." She was encouraged to take aspirin.

In May 2005, plaintiff continued to complain of arm and hand pain and was diagnosed with possible tendinitis and nerve entrapment.  She agreed to undergo a nerve entrapment study.

In July 2005, plaintiff was diagnosed as suffering from heart disease and angina, chronic neck, shoulder, arm, and hand pain, and insomnia.

In October 2005, plaintiff continued to suffer from

myofascial pain.

**Medford Neurological & Spine Clinic.**

In August 2000, plaintiff was examined at the clinic as a follow-up to her treatment at Three Rivers Community Hospital for injuries she suffered from her fall at the gift shop.  Plaintiff was diagnosed with "ongoing diffuse symptomatology after a fall" that "seems suggestive of a post-concussive syndrome, especially the headaches, dizziness, nausea, fatigue, diffuse numbness and aching."  He advised plaintiff that her symptoms such as headaches, dizziness, nausea, fatigue, diffuse numbness and aching were "consistent with the syndrome" and "in almost all cases, this resolves itself spontaneously over a few weeks or months."  He also diagnosed tobacco abuse (frequently mentioned by other examining physicians), and possible hypertension.

**Yung K. Kho, M.D. - Neurologist.**

In August 2000, two months after she fell at the gift shop, Dr. Ko examined plaintiff neurologically.  He found she did not have any neurological structural deficit, but there was a "major functional component with psychological symptom magnification."

**Mark A. Foreman, M.D. - Orthopedic Surgeon.**

In August 2000, Dr. Foreman also examined plaintiff.  He took x-rays of her knee and found no degenerative changes from three years earlier.  He found no tenderness, instability, snapping, locking, or pain. It "appear[ed]" to him she suffered a

"contusion to the anterior aspect of [the] left knee . . . and probably has some chondromalacia of the patella." He opined that "most of the stiffness" in the knee was from the trauma itself and "the contusion," but there were "no mechanical problems and surgical intervention [was] not indicated."

**Rogue Valley Neurosurgical.**

In December 2002, plaintiff was treated by neurosurgeon, Thomas Purtzer, M.D., for pain in her back which she rated as 9 on a 1-10 pain scale level. She attributed the pain to her workplace injury. She stated that all of her activities worsened the pain, but exercises, changing position, and stretching eased it. She also reported numbness in her forearms, thighs, and buttocks, and weakness in her lower back and legs.

On examination, plaintiff did not appear uncomfortable but she exhibited moderate pain behavior. Her low back range of motion was 10% of normal and markedly self-limited. Waddell signs for overreaction were positive. Dr. Purtzer diagnosed chronic pain syndrome and chronic mechanical low back pain with no radiculopathy and an unquantified neuropsychological status. Dr. Purtzer recommended that plaintiff be "as active as possible" and that she should "resume more normal activities."

**Rogue Valley Medical Center.**

In April 2003, plaintiff underwent a left heart catheter-ization and coronary angiography (x-ray of the blood vessels in

13 - OPINION AND ORDER

the heart), which revealed a "minor atherosclerotic luminal coronary irregularity with no significant focal narrowing."

In September 2003, plaintiff underwent excision of a "left upper back soft tissue mass of uncertain behavior." The mass was removed successfully, and sent to the laboratory for review. The mass was a benign tumor. Plaintiff healed well from the surgery and reported that she had less back pain and a greater ability to turn her head to the left following it.

In June 2004, plaintiff was admitted to the Medical Center for a skin infection and acute renal failure associated with the infection. She was discharged one week later much improved. She was advised not to take non-steroidal, anti-inflammatory drugs.

In August 2005, plaintiff complained of bilateral arm fullness, a soft tissue mass in her right elbow, and ongoing upper arm and shoulder pain. She was reassured that the mass was not contributing to her arm and shoulder pain symptoms.

In September 2005, plaintiff was examined for an evaluation of symptoms of angina. She underwent a cardiac angiography that showed she was "not having cardiac ischemia as the cause of her chest discomfort."

**Renal Care Consultants.**

In July 2004, plaintiff was seen for a follow-up examination following her hospitalization for acute renal failure. She was

14 - OPINION AND ORDER

in no acute distress and "back to her usual state of health, feeling well," but continuing to have "mild fatigue."

**James W. Theen, M.D. - Diabetes Specialist.**

Medical records from October 2003 through May 2004 reflect that Dr. Theen treated plaintiff for hyperthyroidism (Graves' disease). Plaintiff complained of tremors and palpitations on the latter visit. Her final diagnosis was "History of Graves' disease," "back pain," and "Tobaccoism." She was encouraged not to smoke and to lose weight.

**Peter Grant, M.D. - Rehabilitation Physician.**

In November 2005, Dr. Grant evaluated plaintiff's back and lower extremity problems. He performed both a physical and electrodiagnostic examination. His diagnoses were: Chronic posttraumatic myofascial low back and bilateral extremity pain syndrome; rather significant anxiety/adjustment reaction with mixed emotional features with associated somatic preoccupation, overdramatized pain behavior, inconsistencies on examination, and some functional overlay noted; no lumbosacral radiculopathy, plexopathy, or other physiologic abnormalities; and no evidence of "reflex sympathetic dystrophy/complex regional pain syndrome or other autonomic dysfunction."

Dr. Grant concluded plaintiff "will probably continue to be rather recalcitrant to most treatment efforts." He recommended "physical therapy with myofascial protocol and a rapid transition

15 - OPINION AND ORDER

to instructing and monitoring a patient home program."

**David Appleby, M.D. - Orthopedic Surgeon.**

In February 2006, Dr. Appleby examined plaintiff for complaints of parasthesia in her right hand and pain symptoms in her neck, back, and lower extremities.  He assessed her as having ulnar nerve compression neuropathy of the right elbow, with non-physiologic distribution of pain and parasthesia.  He suggested psychological treatment might be more beneficial to her than physiologic treatment.  He noted she was "concerned about getting disability" and had "difficulty finding a physician who is willing to sign her off as fully disabled."

A month later, Dr. Appleby opined there was a 50% likelihood of successful surgery on plaintiff's right elbow ulnar nerve.

**David Traul, M.D. - Vascular Surgeon.**

In April 2006, Dr. Traul examined plaintiff for complaints of upper arm fullness and discomfort.  He recommended a rheumatologic evaluation.

**Medical Evaluation.**

There is no record of any medical evaluation by the Commissioner or any other party.

**Psychological Evaluations.**

**Theodore Millon, Ph.D.**

In January 2003, a psychological profile of plaintiff noted

that "there is a strong probability medical treatment without a psychological treatment component will be unsatisfactory for this patient's periodic and recurrent pain problems.  The healthcare provider should be alert for excessive requests for pain medications."  The profile also noted "[s]he may report significant decrements (loss) in her ability to maintain premorbid activities of daily living."

In light of these issues, the report noted, among other things, that plaintiff "may be at risk of overusing healthcare services," and "her ability to adhere to a self-care regimen or prescribed lifestyle changes may become problematic."

**Katherine Greene, Psy.D.- Psychologist.**

In February 2007, plaintiff underwent a psychological evaluation.  She was diagnosed as suffering from "Adjustment Disorder with Depressed Mood," with mild to moderate levels of depression "secondary to her physical pain and situation," which "may in part be due to fatigue, stress, and poor attention and concentration from chronic pain."  She was assigned a GAF score of 69 (mild symptoms and some difficulty in social, occupational, or school functioning, but generally functioning pretty well).

<u>**DISCUSSION**</u>

**<u>The ALJ's Findings</u>.**

**a.  Rejection of Plaintiff's Testimony.**

17 - OPINION AND ORDER

Plaintiff contends "this case turns on the ALJ's credibility findings" as to plaintiff's testimony relating to the extent of her physical impairments.  The Commissioner, however, contends the ALJ gave clear and convincing reasons for finding plaintiff's testimony regarding the severity of her physical impairments was not credible.  I agree.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the

18 - OPINION AND ORDER

claimant's reputation for lying, prior inconsistent statements
concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) an unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily activities.
Id. at 1284 (citations omitted).

Here there is no objective evidence to support the number
and extent of physical impairments claimed by plaintiff.  The
ALJ discussed at length the issues he had with plaintiff's
description of the severity of her physical impairments and
summarized them by stating "the claimant's credibility is deemed
so problematic that it is of no meaningful use for the purpose of
establishing the existence of any 'severe' medical impairment."
The ALJ listed examples of "multiple instances in which the
claimant has added to her list of complaints during medical
examinations, apparently in an attempt to persuade a physician of
her disability, after her subjective complaints were received
with skepticism."  The ALJ summarized by stating "the claimant's
habit of continually adding to her list of complaints, as an
examination progresses in an effort to  persuade an examiner to
be more sympathetic, is evidence of secondary gain which suggest
that her deceptions are voluntary and raises the prospect of
possible malingering."

The ALJ went on to "accept that there are 'psychological

19 - OPINION AND ORDER

factors' that have influenced the claimant's reports of pain and other subjective complaints.  However, she is not found to have any mental disorder that causes significant involuntary physical or mental functional loss."  The ALJ, therefore, found she did not suffer from a severe mental impairment.

Based on this record, the court finds the ALJ gave clear and convincing reasons for failing to credit plaintiff's evidence regarding the severity of her symptoms.

**b.  Failure to Find a Listed Impairment.**

Plaintiff contends the ALJ erred in failing to find at Step Two that the combination of her physical and mental impairments met the requirements of a Listed Impairment.  I disagree.  As set forth above, plaintiff's claims regarding the severity of her physical impairments were not credible and, therefore, were properly discounted by the ALJ when he made his Step Two finding.

**c.  Failure to Develop Record as to Plaintiff's Psychological/Psychiatric Impairments.**

As set forth above, the record fully supports the ALJ's finding that plaintiff has exaggerated the severity of her physical limitations and their effect on her ability to engage in substantial gainful activity.  The ALJ also considered the psychological record and in fact "accept[ed] that there are 'psychological factors' that have influenced the claimant's reports of pain and other subjective complaints."  The ALJ,

however, found she did not have "any mental disorder that causes significant involuntary physical or mental functional loss."

On the record as a whole, I conclude the ALJ appropriately accounted for psychological factors that may have any impact on plaintiff's ability to engage in substantial gainful activity and there is no need to further develop the record in that regard.

## CONCLUSION

Accordingly, for all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED.**

IT IS SO ORDERED.

DATED this 28 day of June, 2010.


    /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

21 - OPINION AND ORDER